## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JON COUTURE,

Plaintiff,

v.

HAWORTH, INC. and HAWORTH
INTERNATIONAL, LTD.,

Defendants.

Case No. 16-cv-4153

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Jon Couture alleges that he was injured when the armrest of his office chair broke as he was using the armrest to stand up. Couture brought claims against Haworth, Inc. and Haworth International, LTD. for negligent products liability (Count I), strict products liability (Count II), and breach of warranty (Count III). Defendants seek judgment in their favor arguing that: (1) Couture's strict liability and breach of warranty claims are untimely, (2) all claims against Haworth International, LTD are untimely; and (3) Couture's claims fail because he cannot show the chair was defective or that any alleged breach of duty by Haworth caused Couture's injuries. For the reasons stated below, Defendants' motion for summary judgment [57] is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323 (1986). After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

## FACTUAL BACKGROUND[1]

Couture claims that he was injured on February 12, 2013 when the left armrest of an office chair (the "Chair") that he was using at his workplace broke off as he got out of the Chair. (DSOF (Dkt. 59), ¶25). At the time, he weighed approximately 395

---

[1] Unless otherwise noted, the undisputed facts are taken from Defendants' Local Rule 56.1 Statement of Material Facts ("DSOF") [59]. For the reasons explained further below, the Court finds that the following relevant facts in Defendants' Local Rule 56.1 Statement are deemed admitted because they are supported by citation to the record and Couture's responses: (1) do not controvert them; or (2) are unsupported by any citation to admissible evidence in the record: ¶¶8, 12, 13, 16, 21, 22, 24, 25, 29, 30, and 39.

pounds and the Chair was more than twelve years old. (*Id*. ¶¶26–27). The type of chair at issue is a Haworth Improv HE mid-back general-purpose office chair with height adjustable arms ("Model Chair" (as compared to the "Chair" which refers to the specific chair used by Couture)). (*Id*. ¶8). Couture's employer, Hartford, ordered the Chair on April 3, 2000. Haworth manufactured the Chair on May 2, 2000 and delivered it to Hartford on May 11, 2000. (*Id*. ¶¶28–29). Before February 12, 2013, Couture had been using the Chair for approximately four to five years. (*Id*. ¶30).

The Business and Institutional Furniture Manufacturers' Association ("BIFMA") has developed standards and guidelines for office furniture since 1973, and has been an American National Standards Institute (ANSI) Accredited Standards Developer since 1980. (*Id*. ¶¶12–13).[2] Haworth designs its office chairs in accordance with the ANSI/BIFMA X5.1 General Purpose Office Chairs Standard (the "BIFMA X5.1 Standard"). (*Id*. ¶16).[3] Haworth subjects its chairs, including the Model Chair, to periodic compliance testing to ensure the chairs pass the current BIFMA standard. (*Id*. ¶21).[4] In 2000, Haworth subjected the Model Chair to compliance testing that tested arm rest strength in accordance with the then-current 1993 BIFMA Standard,

---

[2] Couture's objection to paragraphs 12 and 13 is that Defendants did not timely disclose Dykstra's expert testimony. That argument is addressed below.

[3] Couture's argument that Haworth has not produced the Chair's original design documents is addressed below.

[4] Although Couture contends that Dykstra's deposition discussed testing in compliance only with the "ES-1058 Revision F test", not with BIFMA, that is not so. (*see* Dkt. 59-9, Dysktra Dep. at pp. 107, 124-5, 135, 139). In addition, Couture stresses that "Revision F" of the ES-1058 test was not produced (although the Dykstra deposition transcript shows that "Revision G" of that test was produced). In any event, the Compliance Testing documents attached to the Dykstra Declaration show the testing that was done, including arm durability testing, on the Model Chair. (Dkt. 59-8, p. 10).

and the Model Chair passed these tests. (*Id.* ¶22). In addition, Haworth tested the arm durability of the Model Chair, which was an additional test not required by the 1993 BIFMA Standard, and the Model Chair passed that test. (*Id.* ¶24). In addition to the Model Chair, Haworth also manufactures an office chair specifically designed for larger, heavier individuals—the Improv HE XL chair "XL Chair." (*Id.* ¶39). It is larger than the Model Chair, and designed and tested to support individuals weighing up to 500 pounds. (*Id.* ¶40).

On August 15, 2014, Couture filed a products liability lawsuit against Haworth, Inc. based on his injuries resulting from the Chair armrest breaking. (DSOF ¶5; *see* case no. 14-cv-07127, Dkt. 1-1). The case was later removed to federal court, and on March 13, 2015, Couture voluntarily dismissed the case, with the parties filing a stipulated dismissal without prejudice pursuant to Federal Rule of Civil Procedure 41. (DSOF ¶6; case no. 14-cv-07127 at Dkts. 23, 24). On March 11, 2016, Couture filed the instant complaint in state court. (Compl., Dkt. 1-2). He brought the same claims as in the 2014 case for strict products liability, breach of warranty, and negligent products liability, and this time named as defendants both Haworth, Inc. and Haworth International, LTD. Defendants timely removed the case from state to federal court. (Dkt. 1; DSOF ¶7).[5]

---

[5] Diversity jurisdiction in this case is undisputed. (*See* DSOF, p.2, Dkt. 71 at 1; Notice of Removal (Dkt. 1, ¶¶5-9) and Dkt. 12).

## ANALYSIS

### I.     Couture's Strict Liability and Breach of Warranty Claims are Time-Barred

Couture concedes that his strict liability and breach of warranty claims are untimely. (Dkt. 70). Under Illinois' statute of repose, "no product liability action based on the doctrine of strict liability in tort shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier." 735 ILCS 5/13-213(b); *see also Yao-Wen Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 733 (7th Cir. 2010) ("a statute of repose, which is designed specifically for products-liability suits…overrides the discovery rule [because] because of the long latency of many product defects, which can under a discovery rule impose vast and unpredictable products liability on manufacturers."). It is undisputed that the chair was delivered to the Hartford on May 11, 2000. (DSOF ¶29). Couture therefore had to bring his strict products liability claim by May 11, 2010 to be timely. He did not do so in his original 2014 complaint or in this case.

For a breach of warranty claim, the statute of limitations in Illinois is four years. 810 ILCS 5/2-725. A cause of action accrues and the statute of limitations begins to run when delivery is made, regardless of when the defect is discovered, with one exception which Couture does not argue applies here. *See* 810 ILCS 5/2-725(2). The Chair was delivered on May 11, 2000 (DSOF ¶29), so Couture's breach of warranty claim should have been filed by May 11, 2004. Couture did not timely file this claim.

Therefore, both the strict product liability claim (Count II) and breach of warranty (Count III) claims are time-barred and dismissed with prejudice.

## II.        Haworth International, LTD

Defendants argue that Couture failed to timely plead any claims against Haworth International, LTD. In response, Couture contends that his claims against Haworth International, LTD "relate back" to his original complaint under Federal Rule of Civil Procedure 15(c). However, Federal Rule 15(c)(1), which governs amendments to pleadings, does not apply here. This case does not involve an amendment to a currently pending pleading. It involves a re-filed action under Illinois' "savings statute" which allows a plaintiff to "commence *a new action*" within one year after voluntarily dismissing it. 735 ILCS 5/13-217 (emphasis added).[6] *See Short v. Grayson*, 2017 U.S. Dist. LEXIS 36389, at \*24 n.9 (N.D. Ill. Mar. 14, 2017) ("Section 13-217, however, governs the *refiling* of causes of action, not the relation back of *amendments* to a currently pending pleading, which is governed by 735 ILCS 5/2-616.") (emphasis in original); *see also Apollo Real Estate Inv. Fund, IV, Ltd. P'ship v. Gelber*, 398 Ill. App. 3d 773, 782, 343 Ill. Dec. 721, 730 (1st Dist. 2009) (distinguishing amendments from refiled actions).

The reason Couture's negligence claims against Haworth Inc. are timely is because of Illinois' savings statute which operates as "an extension of the applicable statute of limitations." *Kruk v. Birk*, 168 Ill. App. 3d 949, 954, 119 Ill. Dec. 625, 629

---

[6] Where the state statute of limitations apply, as here, the coordinate state tolling provisions also apply, including Illinois' one year savings statute. *See Jenkins v. Vill. of Maywood*, 506 F.3d 622, 623–24 (7th Cir. 2007).

(1st Dist. 1988). But that is not so for Haworth International, LTD. Haworth International, LTD was not named in the 2014 action. Even if the re-filed complaint is based on the same set of facts, adding a different defendant "constitute[s] a separate 'action.'" *Flynn v. Allis Chalmers Corp.*, 262 Ill. App. 3d 136, 140, 199 Ill. Dec. 408, 410 (2d Dist. 1994). Thus "section 13-217 does not entitle a plaintiff to refile an action naming a new defendant." *Guiffrida v. Boothy's Palace Tavern, Inc.*, 2014 IL App (4th) 131008, ¶ 56, 387 Ill. Dec. 154, 166. *See also Brengettcy v. Horton*, 2006 U.S. Dist. LEXIS 45828, *23 (N.D. Ill. 2006) (a plaintiff may not use the savings statute to add new parties).

As a result, to be timely, Couture had to file his negligent products liability (including failure to warn) claim against Haworth International, LTD by February 13, 2015.[7] Couture did not do so. He filed this lawsuit on March 11, 2016. Accordingly, all claims against Haworth International, LTD are dismissed with prejudice.[8]

### III.    Negligence Claims against Haworth Inc.

The remaining claims are negligent products liability and negligent failure to warn against Haworth Inc. (hereinafter, "Haworth").

---

[7] Failure to warn also has a two-year statute of limitations. *See Deluca v. Liggett & Myers, Inc.*, 2003 U.S. Dist. LEXIS 5938, at *32-33 (N.D. Ill. Apr. 4, 2003) (Illinois' statute of limitations for personal injury, 735 ILCS 5/13-202, applied to negligence-based failure to warn claims).

[8] Moreover, as explained below, the Court finds that Couture's negligence claims do not survive summary judgment and therefore even if Haworth International, LTD was a proper defendant, judgment would be entered in its favor as well.

### a. Local Rule 56.1

As discussed in footnote 1, *supra*, the Court deemed certain facts admitted because Couture did not controvert those facts in compliance with Local Rule 56.1. Local Rule 56.1 requires, among other things, the party opposing summary judgment provide "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1.

"We have consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (internal citation and quotations omitted). "Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules." *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). The Court also is not obligated "to scour the record looking for factual disputes." *Zoretic v. Darge*, 832 F.3d 639, 641 (7th Cir. 2016) (citations and quotations omitted). Thus although the Court draws reasonable inferences from the evidence in Couture's favor, it deems certain facts admitted because Couture did not controvert Haworth's facts with citation to admissible evidence. *See Gogos v. AMS Mech. Sys.*, 678 F. App'x 411, 413 (7th Cir. 2017).

### b. Negligent Products Liability

"A product liability action asserting a claim based on negligence...falls within the framework of common law negligence. [T]o state a claim for negligence, the plaintiff

must establish that the defendant owed the plaintiff a duty of care, that the defendant breached that duty, and that the plaintiff was injured as a proximate result of such breach." *Winters v. Fru-Con Inc.*, 498 F.3d 734, 746 (7th Cir. 2007) (citations and quotation marks omitted). "As with strict liability, a negligent design claim requires proof of an unreasonably dangerous condition, but with the added ingredient of fault on the defendant's part. Fault can exist when the defendant knew or should have known of the risk posed by the product design at the time of manufacture." *Suarez v. W.M. Barr & Co.*, 842 F.3d 513, 523 (7th Cir. 2016) (internal citations and quotations omitted).

> A manufacturer has a nondelegable duty to design a reasonably safe product. [T]he key question in a negligent-design case is whether the manufacturer exercised reasonable care in designing the product. In determining whether the manufacturer's conduct was reasonable, the question is whether in the exercise of ordinary care the manufacturer should have foreseen that the design would be hazardous to someone. To show that the harm was foreseeable, the plaintiff must show that the manufacturer knew or should have known of the risk posed by the product design at the time of manufacture of the product.

*Jablonski v. Ford Motor Co.*, 2011 IL 110096, ¶ 83, 353 Ill. Dec. 327, 343, 955 N.E.2d 1138, 1154 (Ill. 2011) (internal citations and quotations omitted). A manufacturer's "duty does not require the product to reflect the safest design possible or be incapable of causing injury." *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill. App. 3d 490, 501, 342 Ill. Dec. 210, 220 (1st Dist. 2010).

As Haworth argues, the evidence shows that the Model Chair met the industry standard at the time it was manufactured and passed additional testing for arm durability, supporting its argument that there was no design defect in the Chair. *See*

*Jablonski*, 2011 IL 110096, ¶ 91 ("evidence of industry standards is a factor to be considered in the balance and has always been relevant to determining whether a defendant has exercised reasonable care in designing a product."). In response, Couture argues that (1) the Dykstra declaration is untimely; (2) Couture's expert's report and testimony shows the Chair was unreasonably dangerous; (3) other service reports show Haworth should have known the Model Chair was unreasonably dangerous; and (4) Haworth's inability to produce the design documents for the Chair creates an issue of fact for trial. The Court concludes, however, that Couture has failed to provide any evidence that the Chair was in an unreasonably dangerous condition or that Haworth knew or should have known of a risk posed by the product design *at the time of manufacture* of the Chair.

### 1. Thomas Dykstra

Haworth's witness, Thomas Dykstra is a senior sales engineer at Haworth. (Dkt. 59-8, Exh. 8 (Dykstra Decl.)). He also has served on the BIFMA engineering standards committee since 1999. (*Id.* ¶4). Haworth offers his testimony as both lay and expert rebuttal opinion testimony. Dykstra was deposed in the case as a lay witness on August 27, 2018. (Dkt. 59-9, Exh. 9). After the parties jointly requested an extension of expert deadlines, the Court ordered expert disclosures due January 15, 2019. (Dkt. 56). On January 15, 2019, Haworth disclosed Dykstra in its Rule 26(a)(2) disclosures, stating he was "expected to provide lay and expert testimony regarding testing and industry standards related to the chair unit at issue, including

that the ANSI/BIFMA testing is the industry standard, and provide rebuttal testimony." (Dkt. 75-1). Dykstra provided his declaration on March 14, 2019.

Haworth argues that Dykstra's opinions are Rule 26(a)(2)(C) opinions offered to "contradict or rebut evidence" disclosed in Couture's expert report, under Fed. R. Civ. P. 26(a)(2)(D)(ii). Couture's expert, Christopher Ferrone opined that meeting only the voluntary ANSI/BIFMA standard is "poor engineering processes and causal to this accident." (Dkt. 73-1, Ferrone January 15, 2019 Report). Dykstra's declaration states that the ANSI/BIFMA is the "accepted industry standard for evaluating the safety, durability and structural adequacy of general –purpose office chairs." (Dykstra Decl. ¶9). In response to Haworth's statement of material facts, Couture objects because the Dykstra Declaration is dated March 14, 2019 and therefore "is inadmissible as untimely disclosure of expert testimony." (Dkt. 71 at 3). The Court did not set a deadline for rebuttal reports, but under Rule 26(a)(2)(D)(ii), Dykstra's rebuttal disclosure was due 30 days after the January 15, 2019 Ferrone report. Haworth disclosed Dykstra under Rule 26(a)(2)(C) and (D)(ii) on January 15, 2019, so its disclosure was timely.

Dykstra's Declaration addresses only the subject of whether ANSI/BIFMA is the accepted industry standard for office chairs, in response to Ferrone's testimony. Couture questioned Dykstra about the ANSI/BIFMA standards at Dykstra's August 2018 deposition. In addition, Couture was aware on January 15, 2019 of Haworth's intent to use Dykstra as a rebuttal expert on the topic of the testing of the chair and the ANSI/BIFMA industry standard. If Couture believed that those issues were not

sufficiently covered at Dykstra's August 2018 deposition, it could have sought to depose him before the Court's February 15, 2019 deadline. (Dkt. 56). In addition, Couture's expert, Ferrone, submitted a rebuttal report on March 4, 2019, again addressing the BIFMA Standards, the same topic covered by the Dykstra Declaration. Therefore, Haworth's reliance on Dykstra for rebuttal expert testimony on the ANSI/BIFMA standard was timely disclosed. Even assuming *arguendo* that it was not a timely disclosure, there is no evidence of harm or prejudice to Couture and Couture does not argue that he suffered any such harm.

### 2. *Christopher Ferrone*

Couture relies on his expert, Christopher Ferrone, to argue that Haworth's reliance on the ANSI/BIFMA standard was not in compliance with engineering safety standards, and that Haworth's failure to comply with a different safety standard (the "safety hierarchy") caused Couture's injuries. However, Ferrone did not explain his qualifications to give opinions in this case nor did not show that he relied on a scientifically, objectively-verifiable methodology to arrive at his opinions.[9]

"In performing its gatekeeper role under Rule 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is

---

[9] Haworth did not file a separate *Daubert* motion, instead raising its *Daubert* challenge in response to Couture's response brief and responsive statement of facts. This is appropriate. *See Grismer v. Upjohn Co.*, 1995 U.S. Dist. LEXIS 9066, at *7 (N.D. Ill. June 26, 1995) (considering *Daubert* challenge raised in defendant's reply brief). Moreover, "the district court may consider the admissibility of expert testimony *sua sponte.*" *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). *See also Rivera v. Guevara*, 2018 U.S. Dist. LEXIS 105198, at *5 (N.D. Ill. June 22, 2018) (same).

scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (internal citation and quotations omitted). Federal Rule of Evidence 702 requires an expert to be qualified "by knowledge, skill, experience, training, or education." "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." *Shirley Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990). Courts "consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area." *Trs. of the Chi. Painters & Decorators Pension v. Royal Int'l Drywall & Decorating*, 493 F.3d 782, 788 (7th Cir. 2007).

"In assessing reliability, the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions." *Timm v. Goodyear Dunlop Tires N. Am., Ltd.*, 932 F.3d 986, 993 (7th Cir. 2019). "To satisfy the requirements of Rule 702 and Daubert, [the expert] needed to show that his conclusions were the fruit of a rigorous, objectively-verifiable approach—something more than mere speculation." *Id*. at 994. The burden is on the party seeking to admit the expert to show by a preponderance of the evidence that the expert meets the requirements of Rule 702 and *Daubert. Gopalratnam,* 877 F.3d at 782.

The Court cannot evaluate Ferrone's qualifications because his opening and rebuttal report do not identify what knowledge, skill, experience, training, and/or education qualifies him to testify in this case. Ferrone's Report shows only that he is a Senior Mechanical Engineer at ARRCA, Inc. No CV is attached. During his deposition, Ferrone made reference to being a "forensic scientist since 1988" and doing significant work in the heavy vehicle industry. (Ferrone Dep. at p. 63, 118). That is not enough to pass muster under *Daubert* in this case. Further, Ferrone admitted that he has no experience in the furniture industry. Nevertheless he believed his general engineering experience and training meant that "[t]here's hundreds of thousands of devices that are connected like this throughout the world that I'm more than qualified to give an opinion on." (Ferrone Dep. at pp. 86–87). The Court is not convinced. Not every case requires an expert with specialized expertise in the exact subject at issue. But the present case involves product liability allegations related to a specific product in a particular industry, and Ferrone's report and testimony, which vaguely and generally refers to his qualifications, do not show that his expertise extends to office chair safety standards and testing. *See Timm*, 932 F.3d at 995 ("Though Woehrle has expertise with the design and operation of tires, the record supports the district court's conclusion that this knowledge and experience does not extend to motorcycles.").

In addition, Ferrone's methodology also does not satisfy *Daubert*. He explained that during his inspection, he compared the Chair at issue to a Haworth rehabbed chair he found and purchased on the internet, but did not know how the chair he

purchased was rehabbed and he did not perform any tests on that chair. (Ferrone Dep. at pp. 14-18). When asked about certain items he listed as materials he reviewed to prepare his report, he did not know what they were. (*Id*. at pp. 19–20). When asked why he thought office chairs should last longer than 10 years, he explained that in his personal experience, he had chairs at home that lasted longer than 10 years and had no safety problems. (*Id*. at pp. 82–83). These examples are conjecture from Ferrone's personal experience. *See United States v. Conn*, 297 F.3d 548, 554 (7th Cir. 2002) (expert opinion offers "scientific, technological or other specialized knowledge that the lay person cannot be expected to possess."). Ferrone's reports and testimony do not show that he used a rigorous, objectively-verifiable approach for his methodology. *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("An expert must offer good reason to think that his approach produces an accurate estimate using professional methods, and this estimate must be testable.").

Therefore Ferrone's opinions are excluded and will not be considered in deciding summary judgment in this case.

### *3. No Evidence of Negligent Design*

Couture failed to provide evidence to create a genuine issue of fact that the Chair was negligently designed, that Haworth knew or should have known about a defect in the Chair design at the time of manufacture, or that Couture's injury was caused by the alleged negligent design. "It is the plaintiffs' responsibility, on summary judgment, to make a 'showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at

trial.' It is the plaintiffs' responsibility to go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. There is no requirement that the moving party support its motion with any evidence negating the opponent's claim." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 896 (7th Cir. 2018) (*quoting Celotex*, 477 U.S. at 322).

To oppose summary judgment, Couture relies significantly on his expert, but this Court has found the expert's report and testimony to be inadmissible. *See Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (non-moving party "is only entitled to the benefit of inferences supported by admissible evidence"); *Salerno*, 402 Ill. App. 3d at 501 (in products liability action, plaintiff must provide expert testimony on the standard of care and a deviation from that standard). Couture makes other arguments to oppose summary judgment. He argues that Haworth did not produce the specific design documents for the Chair. Haworth explains that it was not able to locate these documents from twenty-five years ago. Couture argues that the lack of design documents shows that there is an issue of fact for the jury about whether Haworth exercised reasonable care in designing the Chair. (Dkt. 70 at 9). However, Haworth provided evidence that the Model Chair met then-industry standards as well as additional testing standards. *Compare Jablonski*, 2011 IL 110096, ¶ 107, 353 Ill. Dec. at 348 (plaintiff failed to present evidence from which a jury could conclude that defendant's conduct was unreasonable because defendant provided evidence that, among other things, it complied with the industry standard and exceeded that standard by its own heightened testing standards), to *Suarez*, 842 F.3d at 523

(plaintiff identified unreasonably dangerous condition and provided evidence that defendant failed to adequately test its product including defendant's senior director of research and development's admission that he was unaware of any testing or internal discussions at the company about the condition).[10]

Couture also relies on "Field Problem Reports" to argue that there are "multiple other instances where the arms have fallen off or broken off an Improv H.E. chair." Couture contends that Haworth's response to send replacement parts for chairs that were more than 10 years old undermines Haworth's contention that the chair only had a "useful life" of 10 years. (Dkt. 70 at 11-12). Haworth responds that these field reports are inadmissible. The Court agrees. There is no evidence of whether the field reports reflect substantially similar circumstances to the present case. *See Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th Cir. 1988) ("before [] evidence [of other accidents in products liability cases] will be admitted, the proponent must show that the other accidents occurred under substantially similar circumstances.").

---

[10] Couture argues that the design documents are missing as well as the ES-1058 Revision F test. However, the record does not reflect that there was any bad faith on the part of Haworth during discovery, nor does it reflect that Couture sought relief in the form of discovery sanctions. Couture does not ask for an adverse inference for any bad faith conduct nor has he submitted a Rule 56(d) statement that he was unable to present facts to oppose the summary judgment motion. For all of the reasons discussed herein, the Court finds that Defendants have met their burden on summary judgment and Couture has not, and Couture's argument that certain documents are missing does not change that result.

Finally, Couture relies on the deposition testimony of Nathan Wiler, a Haworth project engineer, who believed that "cyclic fatigue failure"[11] caused the chair arm to break. Couture argues this shows that Haworth "was aware of cyclic fatigue failure and knew this was a foreseeable hazard." (Dkt. 70 at 16). Wiler did not state that Haworth knew cyclic fatigue failure was a foreseeable hazard. Furthermore, Couture does not demonstrate how this testimony shows that Haworth knew or should have known about a design defect at the time the Chair was manufactured, or that Couture's injury was caused by the alleged negligent design. *See Swiatlowski v. Werner Co.*, 2006 U.S. Dist. LEXIS 10842, at *15 (N.D. Ill. Mar. 7, 2006) (granting summary judgment to defendant in negligent design case because plaintiff failed to raise an issue of disputed fact as to breach and causation).

For these reasons, judgment as a matter of law in favor of Haworth is warranted on Couture's negligent product liability claim.

### c. Negligent Failure to Warn

As part of his negligent products liability claim, Couture alleges failure to warn (*see* Compl. Dkt. 1-2). Couture alleges that Haworth did not warn about the Chair's propensity to break or about the force or weight that the Chair and/or its appurtenances could withstand. Haworth argues that Couture's assertion that the bolts would not have broken absent failure to warn is speculation, and it was not

---

[11] Wiler defined cyclic fatigue failure: "As a fastener is exposed to movement in a number of different directions, it will exhibit signs of cyclic fatigue where it will eventually fracture." (Wiler Dep, (Dkt. 59-7, Exh 7).

required to inform consumers about facts they already know or about defects that arise after the date of sale. (Dkt. 58 at 12).

To show negligent products liability based on failure to warn, plaintiff must show "that the defendant knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and defendant failed to warn of its dangerous propensity." *Blue v. Envtl. Eng'g, Inc.*, 215 Ill. 2d 78, 96, 293 Ill. Dec. 630, 643 (Ill. 2005). The Court has already found that there is no genuine issue of material fact about whether Haworth knew or should have known that the Model Chair was unreasonably dangerous. *See Salerno*, 402 Ill. App. 3d at 502 (if product is not defectively designed, there is no duty to warn); *Cars R Us Sales & Rentals, Inc. v. Ford Motor Co.*, 2011 U.S. Dist. LEXIS 4890, at *15 (N.D. Ill. Jan. 19, 2011) ("Because plaintiffs have not established defendant knew or should have known of an unreasonably dangerous condition, it follows defendant had no duty to warn of such a condition."). It might be that Haworth's advertising could have been clearer, but the question is whether Haworth failed to warn of the Model Chair's "dangerous propensity." Couture relies on his expert's testimony that Haworth should have provided a warning about the load capacity for the chair, but this Court has determined that his expert is not qualified to opine on the matter. Thus Couture has not provided evidence of the standard of care with respect to warnings in the furniture industry or that Haworth is liable for a failure to warn.

Accordingly, Couture's negligent failure to warn claim also does not survive summary judgment.

## CONCLUSION

For the stated reasons, Defendants' motion for summary judgment [57] is granted. All claims against both Defendants are dismissed. Judgment is entered in favor of Defendants Haworth, Inc. and Haworth International, LTD. Civil case terminated.

E N T E R:

Dated: January 7, 2020

_Mary M Rowland_

MARY M. ROWLAND
United States District Judge